NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| SIYUQ K., | ) |
| | ) Supreme Court No. S-17625 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-17-00224 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT[*] |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) No. 1788 – September 9, 2020 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: Courtney R. Lewis, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee. Elisabeth Mering and Pearl Pickett, Alaska Legal Services Corp., Anchorage, for Native Village of Hooper Bay. Olena Kalytiak Davis, Anchorage, for A.W. (father).

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices.

---

[*]     Entered under Alaska Appellate Rule 214.

# I.    INTRODUCTION

A mother appeals a placement decision in a child in need of aid (CINA) case governed by the Indian Child Welfare Act (ICWA).[1]  She argues that the superior court erred in applying ICWA's placement preferences and by finding that she had not demonstrated, by clear and convincing evidence, that the child's placement should deviate from ICWA's placement preferences.  Because the court did not err in applying ICWA's placement preferences and did not clearly err in finding that the mother had failed to demonstrate, by clear and convincing evidence, that a variance from ICWA's placement preferences was warranted, we affirm the superior court's placement decision.

# II.    FACTS AND PROCEEDINGS

Siyuq K. is the mother of David,[2] an Indian child under ICWA.[3]  The Office of Children's Services (OCS) removed David from his mother's custody in Anchorage when he was nine months old.  Given the nature of this appeal, we do not need to detail the circumstances underlying the removal or the general course of the CINA proceedings.  After adjudication as a child in need of aid in April 2017, David was placed in Anchorage with a state-licensed foster parent, who is neither a family member

---

[1]    25 U.S.C. §§ 1901-1963 (2018).  ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture."  25 U.S.C. § 1902.

[2]    We use pseudonyms to protect the family's privacy.

[3]    *See* 25 U.S.C. § 1903(4) (" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.").  Siyuq is a member of Native Village of Hooper Bay (the Tribe), a predominantly Yup'ik community.

nor Alaska Native.[4]  The court approved this placement because at the time no family member was available or appropriate.

About seven months later David's great-aunt, Teena K., contacted OCS seeking to have David placed with her in Virginia.  After a lengthy investigation process, OCS denied Teena's request because David "ha[d] been placed with his current placement for over two years and [was] bonded with that family."  OCS planned to pursue David's adoption by the foster mother, and the Tribe favored keeping David in Alaska.  David's court-appointed guardian ad litem (GAL) sought a placement review hearing, which was held in February 2019.

During the placement review hearing, Siyuq, OCS, and the Tribe supported continued placement with the foster family.  The court heard evidence about David's special needs and bonding with the foster parents, about the Tribe's desire that David stay in Alaska and connected with his Native heritage, and about the foster family's willingness to keep David connected with the Tribe.  Teena testified that she was aware of David's special needs, that in Virginia he would have access to appropriate services, and that she appreciated his heritage and cultural needs and would ensure he stayed connected to the Tribe.  The superior court ruled that clear and convincing evidence supported good cause to deviate from ICWA and CINA preference requirements and approved OCS's decision continuing David's placement with the foster mother.

The foster mother later expressed to OCS that she had concerns about her ability to provide David services and reservations about the proposed adoption,

---

[4]     *See* AS 47.10.084(a) (imposing on OCS, when possessing legal custody of child in need of aid, "responsibility of . . . determin[ing] . . . where and with whom the child shall live"); 25 U.S.C. § 1915(b)(i)-(ii) (granting preference in foster care placement of Indian child under ICWA to "a member of the Indian child's extended family" or "a foster home licensed, approved, or specified by the Indian child's tribe").

particularly whether David would be better off with a family member. She followed up with a message to OCS that David would be better off with Teena and that OCS should arrange it, and she confirmed this in a later telephone conversation. OCS began the process of placing David with Teena.

Siyuq then requested a placement review hearing. OCS, the GAL, the Tribe, and David's father supported placement with Teena. They contended that Teena was a highest-priority ICWA placement, that the standard of review for OCS's placement decision was abuse of discretion, and that OCS had not abused its discretion by deciding to place David with Teena. The OCS caseworker testified that OCS had not inappropriately influenced the foster mother. The foster mother testified about her concerns with pursuing David's adoption. Teena testified to her continued interest in David's placement, knowledge of his special needs, and willingness to keep him connected with the Tribe.

Siyuq argued to the superior court that OCS was required to prove, by clear and convincing evidence, good cause to deviate from the prior placement with the foster mother. She also argued that the preferences regarding placement "in the least restrictive setting" most closely approximating a family "within reasonable proximity to the child's home, taking into account any special needs of the child and the preferences of the child or parent," should control the court's decision. She concluded that it might be traumatic for David to change homes and that, as the court had ruled in the first hearing, it would be difficult for Teena to support David's connection with the Tribe.

The superior court upheld OCS's decision to place David with Teena. The court determined that Siyuq had not met her burden to show, by clear and convincing

evidence, good cause to deviate from ICWA's family preference for David's placement with Teena. Siyuq appeals the placement decision.[5]

## III. STANDARD OF REVIEW

We review a superior court's factual findings for clear error.[6] Whether the superior court's findings comply with the CINA and ICWA statutes is a question of law reviewed de novo.[7] The superior court's determination of good cause for deviation from ICWA's placement preferences is reviewed for abuse of discretion.[8] Siyuq does not suggest that the superior court's decision *declining* to find good cause for deviation from those preferences should be reviewed under any other standard.

---

[5] Siyuq later stipulated to termination of her parental rights, and it is questionable whether she still has standing to contest a pre-termination placement decision. *See Shirley M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 342 P.3d 1233, 1244 (Alaska 2015). But the parties did not brief the issue due to the termination's timing; because we conclude that the placement decision should be affirmed, we do not address the standing issue.

[6] *Diego K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 411 P.3d 622, 627 (Alaska 2018).

[7] *Id.*

[8] *Native Vill. of Tununak v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 303 P.3d 431, 440 (Alaska 2013), *vacated in part*, 334 P.3d 165 (Alaska 2014); *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 430 (Alaska 2012); *see also* 25 C.F.R. §§ 23.101-.144 (2019) (clarifying minimum federal standards for implementing ICWA); U.S. DEP'T OF THE INTERIOR, GUIDELINES FOR IMPLEMENTING THE INDIAN CHILD WELFARE ACT 61 (2016) ("The court retains the discretion to find that good cause does not exist . . . even where one or more of the listed factors for good cause is present.").

## IV. DISCUSSION

### A. Siyuq's Arguments

On appeal Siyuq argues for the first time that the superior court committed legal error by determining that Teena was an ICWA-preferred placement because Teena is only a great-aunt to David and therefore not within ICWA's definition of "extended family member."[9]  Siyuq asserts that the Tribe "did not submit any evidence that [Teena's family members] are considered extended family members" under its tribal customs.  Siyuq further contends for the first time that, as a matter of law, Teena does not fall within any of ICWA's other preferred placement categories, because she is not "a foster home licensed, approved, or specified by the Indian child's tribe," an "Indian foster home," or "an institution for children approved by an Indian tribe."[10]  Building on these legal arguments, Siyuq asserts that, because neither Teena nor the foster mother are ICWA-preferred placements, the court abused its discretion by failing to consider the proximity of each placement to David's home.  She further asserts that, even if Teena were a preferred placement, the court erred by finding there was no longer good cause to deviate from the placement preferences.

### B. Resolving The Statutory Argument

#### 1. The statute

ICWA establishes a number of requirements for foster care placements of Indian children.[11]  OCS must place an Indian child "in the least restrictive setting which

---

[9]     *See* 25 U.S.C. § 1903(2) (defining extended family member).

[10]     *See* 25 U.S.C. § 1915(b).

[11]     *Id.*

most approximates a family and in which his special needs, if any, may be met."[12] OCS must place an Indian child "within reasonable proximity to his or her home, taking into account any special needs of the child."[13] But OCS also must, absent "good cause to the contrary," place an Indian child with either a "member of the Indian child's extended family," a "foster home licensed, approved, or specified by the Indian child's tribe," an "Indian foster home licensed or approved by an authorized non-Indian licensing authority," or "an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs."[14] This preference order may be altered by tribal resolution, and OCS must follow the altered order if it is "the least restrictive setting appropriate to the" child's needs.[15] And, when appropriate, the Indian child's or the parent's preference should be considered.[16]

### 2. The argument

As noted earlier, in her appeal Siyuq argues for the first time that Teena was not an ICWA-preferred placement because a great-aunt does not fall within ICWA's "extended family member" definition. Because this argument was not raised until this

---

[12] *Id.*

[13] *Id.*

[14] *Id.* at (i)-(iv). An "extended family member" is "defined by the law or custom of the Indian child's tribe or . . . [is] a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." 25 U.S.C. § 1903(2).

[15] 25 U.S.C. § 1915(c).

[16] *Id.*

appeal, it was waived in the superior court[17] and we consider it only under the plain error standard.[18]

Throughout the proceedings, all parties — including Siyuq[19] — treated Teena as a preferred ICWA placement. The Tribe correctly points out that the waiver rule "serves an important function" and that "if at any time — throughout three days of placement review hearings or in the associated briefing — Siyuq had argued that Teena was not an 'extended family member' under ICWA, the Tribe would have adduced additional evidence . . . why she was, under its laws and customs, part of David's extended family." The waiver rule exists, as the Tribe correctly notes, "so that a party is not caught, after the close of evidence, having to defend a point that was never at issue."

The superior court's finding that Teena was an "extended family member" and therefore an ICWA-preferred placement was not an obvious mistake creating a high likelihood of injustice.[20] As the Tribe correctly points out, ICWA establishes no specific evidentiary standard for finding a prospective foster parent to be an "extended family

---

[17]     *See Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019) (noting that "[a]rguments raised for the first time on appeal are generally waived").

[18]     *See Marcia V. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 201 P.3d 496, 502 (Alaska 2009).

[19]     Siyuq argues in her reply brief that "under the invited error doctrine" we are not precluded from reviewing the court's decision for error even if she agreed with its characterization of the placement preference. "When an error is invited, an appellate court examines the error to see if there is an 'exceptional situation' where reversal is necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice." *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1038 (Alaska 2008) (quoting *People of Guam v. Alvarez*, 763 F.2d 1036, 1038 (9th Cir.1985)). We see nothing exceptional in this situation.

[20]     *See Marcia V.*, 201 P.3d at 502.

member."[21]  And although the Tribe could have provided expert testimony whether a great-aunt would constitute an "extended family member" according to Hooper Bay customs had that been challenged, the Tribe contends in its brief that it "knew it was the authority on 'extended family members,' and [it] has not wavered in the position that Teena is an extended family member."  The Tribe's contention that its "position must be afforded respect" is persuasive.

Siyuq points to our *Shirley M. v. State, Department of Health & Social Services, Office of Children's Services* decision upholding OCS's deviation from state statutory placement preferences and declining to place a child with her great-grandmother.[22]  But *Shirley M.*, a case involving whether a great-grandmother was an "adult family member," is inapposite; it was decided under the relevant CINA statute, which has no provision about tribal customs and laws.[23]  Although we noted that "OCS's position that 'grandparent' does not include 'great-grandparent' " under the CINA statute was "plausible,"[24] we expressly declined to decide the issue.[25]

Siyuq provides no other plausible grounds to suggest it was error to find Teena was an "extended family member."  Because the parties all impliedly or expressly agreed that Teena was an "extended family member" throughout the proceedings and because the Tribe reaffirms that position in its appeal brief, it was not an "obvious mistake" for the superior court to conclude that Teena was a preferred placement under

---

[21]     *See* 25 U.S.C. § 1915(b).

[22]     342 P.3d 1233, 1244 & n.41 (Alaska 2015).

[23]     *See generally* AS 47.14.100(e).

[24]     *Shirley M.*, 342 P.3d at 1244 n.41.

[25]     *Id.* at 1244 ("[W]e need not resolve either of these issues.").

ICWA. Because it was not plain error to find Teena was a preferred placement, Siyuq's subsequent argument — that ICWA's proximity requirement should have governed the court's decision — is unavailing, and the argument will not be addressed.

C.      **Resolving The Erroneous Good Cause Determination Argument**

Siyuq next contends that even if Teena were a preferred placement under ICWA, the superior court erred by declining to find good cause to deviate from ICWA's placement preferences. Siyuq contends the court erred by finding that the foster mother had wavered in her commitment to adopting David. According to Siyuq, the foster mother had a "credible fear that David would be removed from her by the legal system" but her resulting "emotional conflict" was "not evidence that she waver[ed] in her commitment."

The superior court found that "the strain of [the foster mother] not knowing" whether David would remain with her, "[c]ombined with the fact that [Teena] is [David's] family and will provide . . . a loving, supportive, and nurturing environment," understandably caused the foster mother to waver in her belief that she should continue seeking David's adoption. The court's order makes clear that its finding was based on the foster mother's testimony, expressly referencing her statements that "it was 'time for this to be over,' to get [David] into 'his forever home,' and that 'this needs to be done.' " This finding has direct support in the record, and it certainly does not leave us with a "definite and firm conviction that a mistake has been made."[26]

---

[26]    *See Charles S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 442 P.3d 780, 788, 793 (Alaska 2019) (noting that "[w]e will not reweigh evidence when the record provides clear support for the superior court's ruling" and that "our deference 'to a superior court's factual findings is particularly appropriate in close cases' " (first quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.,* 175 P.3d 1263, 1267 (Alaska 2008); then quoting *Barbara P. v. State,*

(continued...)

Siyuq also appears to contend that the superior court erred by failing to give sufficient weight to the risk that placing David with Teena "would not permit David to stay meaningfully connected to his identity as a Yup'ik member of the Native Village of Hooper Bay." But Teena testified to her commitment to keeping David connected with the Tribe and, as the Tribe points out, the Tribe "carefully weighed the facts of David's case, and supported a relative, non-native, out of state placement over an in-state placement that is neither native *nor* a relative as the best option for David, and the Tribe." The superior court weighed the evidence and did not abuse its discretion by determining that "[David's] best interests would be served by placement" with Teena.

## V.   CONCLUSION

We AFFIRM the superior court's placement decision.

---

[26]   (...continued)
*Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1260 (Alaska 2010))).